2020 IL App (1st) 172837

SIXTH DIVISION
August 14, 2020

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-17-2837

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 82 CR 00761 |
| | ) | |
| FRED HUMPHREY, | ) | Honorable |
| | ) | James Michael Obbish, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Fred Humphrey, appeals from the circuit court's denial of his request for leave to file a successive petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, Mr. Humphrey argues that this denial was in error because his claim that his natural-life sentence for offenses he committed at the age of 21 was unconstitutional pursuant to the eighth amendment of the federal constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) satisfied the cause-and-prejudice test. For the following reasons, we affirm.

¶ 2 I. BACKGROUND

¶ 3 Mr. Humphrey's convictions stem from events occurring on January 8, 1982, when he—

along with his codefendants Lydell White and Lawyer Pace—robbed Harrison Young outside of Mr. Young's apartment. Mr. White and Mr. Pace both pleaded guilty prior to Mr. Humphrey's trial and are not parties to this appeal. The facts outlined below are taken from Mr. Humphrey's direct appeal unless otherwise noted.

¶ 4    The evidence at trial showed that, on January 8, 1982, Mr. Young was returning to his apartment when Mr. Humphrey, Mr. White, and Mr. Pace robbed him at gunpoint, taking his wallet and 11 cents. As they turned to go, Mr. Young asked for his identification cards back. The men then forced Mr. Young to let them into his apartment, where Mr. White proceeded to rob two individuals who lived with Mr. Young—Dorothy Gordon and Stanley Stinson—taking $130 from Mr. Stinson and 30 cents from Ms. Gordon. Mr. Pace forced Mr. Young into a bedroom, and eventually one of the men entered the room, wrapped a blanket around Mr. Young's head, tied his feet and hands, and dragged him to the bathroom. Later, someone shoved a plastic bag into Mr. Young's mouth, wrapped a second blanket around his head, and then shot him twice in the face.

¶ 5    Ms. Gordon was raped twice by Mr. Pace, once by Mr. Humphrey, and was shot in the side. Mr. Stinson was shot multiple times in the face. Before leaving the apartment, the men turned on the gas stove and extinguished the pilot light, leaving the victims inside. Mr. Young survived the incident, Ms. Gordon also survived but was paralyzed, and Mr. Stinson died from his wounds.

¶ 6    Mr. Pace turned himself into the police approximately 10 hours after the incident. Mr. Humphrey was arrested soon after and eventually admitted his role in the incident, including raping Ms. Gordon. He also submitted a written statement confirming these events. When he testified at trial, however, while repeating much of his statement to the police, he denied raping Ms. Gordon.

¶ 7    The jury found Mr. Humphrey guilty of murder, attempted murder, armed robbery, home invasion, and rape. Prior to sentencing, the circuit court received a presentence social investigation

report concerning Mr. Humphrey, which detailed, among other things, his education history, employment history, criminal background, and family background. Mr. Humphrey was adjudicated a delinquent in 1975 for armed robbery, in 1976 for possession of a sawed-off shotgun, and later that same year for murder. During the sentencing hearing, Mr. Humphrey argued in mitigation that he was only 15 and 16 at the time of the prior offenses and that he was "a product of the [Chicago Housing Authority]." He argued, "there is a lot of peer pressure on a young individual who has no money and is unable to do really much outside the boundaries of Cabrini-Green" and further noted that while he was incarcerated in the Juvenile Department of Corrections, "he had some adjustment problems, but around 1979 he started to make extremely good progress" and was released on parole in September 1980. Finally, Mr. Humphrey noted that he "didn't initiate or instigate this series of events" or take part in any planning, but rather that "[t]he case against him is based on accountability." Mr. Humphrey's pastor also testified on his behalf at sentencing.

¶ 8    On December 9, 1982, the circuit court sentenced him to natural life in prison, reasoning:

"All I can say is I s[aw] you during the trial. You have no remorse. You have no remorse even today, despite the fact that this is one of the most vicious killings, one of the vicious acts of cruelty of one man to another that I have ever seen in my thirteen years on the criminal bench. And I don't see any possibility of you being rehabilitated *** as far as I am concerned, there is no hope for you. Therefore I am going to give you natural life. And I think that is the only way I am going to keep you out of hurting some more people."

¶ 9    Mr. Humphrey appealed his conviction, and this court affirmed it on December 17, 1984. *People v. Humphrey*, No. 1-82-2999 (1984) (unpublished order under Illinois Supreme Court Rule 23). Thereafter, Mr. Humphrey filed his first postconviction petition, which the circuit court denied on January 24, 2002, and this court affirmed on March 30, 2004. *People v. Humphrey*, No. 1-02-

0350 (2004) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10 Mr. Humphrey filed his successive postconviction petition—the subject of this appeal—on May 15, 2017, arguing that the United States Supreme Court case *Miller v. Alabama*, 567 U.S. 460 (2012), and its Illinois progeny, specifically *People v. House*, 2015 IL App (1st) 110580, *vacated*, 2019 IL App (1st) 110580-B, and *People v. Harris*, 2018 IL 121932, rendered his natural-life sentence unconstitutional in light of his age at the time he committed the offenses. Mr. Humphrey requested a new sentencing hearing so his youth and attendant characteristics could be considered.

¶ 11 On September 15, 2017, the circuit court denied Mr. Humphrey's motion for leave to file a successive postconviction petition. The circuit court distinguished *House* and *Miller*, stating *Miller* applied only to juveniles—those under 18—and *House* did not extend *Miller* to youthful offenders who were 21 or older at the time of their crimes. Specifically, the circuit court noted "the defendant in *House* was 19 years old whereas petitioner here was older and more developed at 21 years old [and] the *House* defendant merely served as a lookout" while Mr. Humphrey "actively participated in the events that day, including his rape of [Ms.] Gordon."

¶ 12 Mr. Humphrey now appeals.

¶ 13                                    II. JURISDICTION

¶ 14 The circuit court denied Mr. Humphrey's motion for leave to file a successive postconviction petition on September 15, 2017. Mr. Humphrey dated his notice of appeal October 8, 2017, and the envelope was postmarked October 11, 2017. The circuit court received his notice on October 17, 2017—32 days after the circuit court denied Mr. Humphrey's motion for leave to file his petition. Ten days later, the circuit court appointed appellate counsel and stated that Mr. Humphrey's appeal was timely filed "per the envelope." Although the State does not contest

4

appellate jurisdiction, "[a] reviewing court has an independent duty to consider issues of jurisdiction, regardless of whether either party has raised them." *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 15    "[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from ***." Ill. S. Ct. R. 606(b) (eff. July 1, 2017). According to Illinois Supreme Court Rule 373 (eff. July 1, 2017), "briefs or other documents required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court." However, "[i]f received after the due date, the time of mailing by an incarcerated, self-represented litigant shall be deemed the time of filing" and "[p]roof of mailing shall be as provided in Rule 12." *Id.*

¶ 16    Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017) states that service is proved:

"in case of service by mail by a self-represented litigant residing in a correctional facility, by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered."

¶ 17    Section 1-109 of the Code of Civil Procedure further clarifies:

"The person or persons having knowledge of the matters stated in a pleading, affidavit or other document certified in accordance with this Section shall subscribe to a certification in substantially the following form: Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." 735 ILCS 5/1-109 (West 2016).

¶ 18    Here, the record contained no such certification. Therefore, to find jurisdiction in this case, we would have to exclusively rely on the postmark without the accompanying certification. While some courts have refused to find that a postmark is equal to a certification (*People v. Lugo*, 391 Ill. App. 3d 995, 998 (2009); *People v. Blalock*, 2012 IL App (4th) 110041, ¶ 11), we follow the view taken in *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 14, where the court reasoned:

> "Requiring a court to overlook a clearly legible postmark showing that a document was processed by a disinterested third party, such as the post office, on or before the date by which the document was required to be mailed is to disregard the best, most competent evidence of the latest date of mailing consistent with the 'pro-mailing policy of Rule 373.' "

¶ 19    *Hansen* was decided prior to the amendment of Rule 12, when a *pro se* litigant was still required to include a notarized affidavit stating the time and place of mailing, the complete address that appeared on the envelope, and that proper postage was prepaid. *Id.* ¶ 10. However, the idea that "if there is a timely and legible postmark, an affidavit or a certification [by an attorney] of mailing is a corroborative redundancy" remains unaffected. *Id.* ¶ 14. We think the rationale and holding of *Hansen* remains persuasive and that a postmark may continue to serve as certification of a timely filing by a self-represented litigant residing in a correctional facility,

¶ 20    We do not think the validity of *Hansen* was in any way impacted by our supreme court's more recent decision in *Huber v. American Accounting Ass'n*, 2014 IL 117293. In that case, the court detailed the evolving requirements for Rule 373, which, when adopted in 1967, "provided that time of mailing 'may be evidenced by a post mark affixed in and by a United States Post Office.' " *Id.* ¶ 13. The court noted that Rule 373 was eventually amended to require an affidavit of a nonattorney or certification by an attorney due to illegible postmarks and delays in affixing postmarks. *Id.* The plaintiff in *Huber* argued that the affidavit requirement "was not intended to

supplant other objective, competent proof of mailing, and that a legible postmark must be accepted as proof of mailing." *Id.* ¶ 14. The court, however, determined that it did not need to reach this issue because the envelope in *Huber* was not postmarked at all, but rather only had a post label that was dated the day of purchase and not necessarily the day of mailing. *Id.* ¶¶ 16-18. The court held that this was not sufficient to satisfy Rule 12(b). *Id.* ¶ 18. In this case, in contrast, there was a legibly postmarked envelope that made it clear the notice of appeal was timely deposited into the mail.

¶ 21    In the case before us, we find Mr. Humphrey timely filed his notice of appeal because the post office, a disinterested third party, legibly postmarked the envelope within the 30-day filing deadline for the notice of appeal. Accordingly, we have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 606 and 651(a) (eff. July 1, 2017), governing criminal appeals and appeals from final judgments in postconviction proceedings.

¶ 22                                III. ANALYSIS

¶ 23    The Act provides an avenue for an incarcerated person to collaterally attack his or her conviction by asserting it was "the result of a substantial denial of [his or her] rights under the United States Constitution or the Illinois Constitution or both." *People v. House*, 2019 IL App (1st) 110580-B, ¶ 25; 725 ILCS 5/122-1(a)(1) (West 2016). The Act generally contemplates the filing of only one postconviction petition, and successive petitions are disfavored. 725 ILCS 5/122-1(f) (West 2016). However, a defendant can obtain leave to file a successive postconviction petition "when fundamental fairness so requires." (Internal quotation marks omitted.) *People v. Ortiz*, 235 Ill. 2d 319, 329 (2009). In cases where actual innocence or the death penalty are not at issue, the fundamental fairness standard is met if the petitioner can demonstrate cause and prejudice for not

raising the alleged errors in his or her initial petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002). Cause is "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in an earlier proceeding." (Internal quotation marks omitted.) *Id.* at 460. Prejudice is established "by demonstrating that the claim not raised during [the] initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016). The cause-and-prejudice test is a higher standard than the frivolous-or-patently-without-merit standard employed at the first stage of a defendant's initial postconviction petition. *People v. Smith*, 2014 IL 115946, ¶ 35. First stage survival requires only that a petitioner allege a claim that has an arguable basis in law or fact. *People v. Tate*, 2012 IL 112214, ¶ 9. An individual requesting leave to file a successive postconviction petition, however, must make a *prima facie* showing of cause and prejudice (*People v. Bailey*, 2017 IL 121450, ¶ 24) and "submit enough in the way of documentation to allow a circuit court to make that determination" (*People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)). The circuit court should deny leave to file a successive postconviction petition "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. We review denial of leave to file a successive postconviction petition *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 24    Mr. Humphrey argues on appeal that the circuit court erred in denying him leave to file a successive postconviction petition because he satisfied the cause-and-prejudice test with respect to his challenge that, as applied to him, his natural life sentence violates the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). He argues the cause prong is met because *Miller* and its progeny were not decided until after

his initial postconviction petition was filed and the prejudice prong is met because he is serving a sentence that is unconstitutional as applied to him. The State responds that the eighth amendment *Miller* protections only apply to juveniles and that Mr. Humphrey cannot make an as-applied challenge under the proportionate penalties clause because he was not a "youthful offender," his sentence was discretionary, the circuit court considered evidence regarding Mr. Humphrey's age and circumstances before determining his sentence, and he failed to demonstrate how his specific circumstances rendered him youthful.

¶ 25    The United States Supreme Court has held that the eighth amendment prohibits the execution of juvenile offenders (*Roper v. Simmons*, 543 U.S. 551, 578-79 (2005)), a life sentence without parole for juvenile offenders who commit nonhomicide crimes (*Graham v. Florida*, 560 U.S. 48, 82 (2010)), and mandatory life sentences without the possibility of parole for all juvenile offenders (*Miller*, 567 U.S. at 489). The Supreme Court further provided such protection applies retroactively. *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 736 (2016).

¶ 26    The *Miller* line of cases has established that "children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471. The Court recognized three differences critical to the distinction between the two groups: (1) "a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking," (2) heightened vulnerability to "negative influences and outside pressures" from family and peers and an inability to extricate themselves from where they live, and (3) less fixed traits, meaning actions are "less likely to be evidence of irretrievabl[e] deprav[ity]." (Internal quotations omitted.) *Id.*

¶ 27    The Illinois Supreme Court, recognizing that the United States Supreme Court's language in *Miller* "is significantly broader than its core holding," held that "[l]ife sentences, whether

mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." *People v. Holman*, 2017 IL 120655, ¶¶ 38, 40. The court has also held that a sentence of 40 years or more constitutes a *de facto* life sentence under *Miller*. *People v. Buffer*, 2019 IL 122327, ¶ 40.

¶ 28    In *Harris*, the court opened the door for an offender who was 18 or older to make an as-applied challenge under the proportionate penalties clause. *Harris*, 2018 IL 121932, ¶ 48; see also *People v. Thompson*, 2015 IL 118151, ¶ 44 (suggesting that a 19-year-old could raise an as-applied challenge to a mandatory life sentence in a postconviction proceeding). The defendant in *Harris* argued on direct appeal that eighth amendment *Miller* protections for juveniles should be applied to all "young adults under the age of 21" and that his mandatory aggregate sentence of 76 years of imprisonment violated both the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. *Harris*, 2018 IL 121932, ¶¶ 37, 53.

¶ 29    The court rejected the defendant's facial argument that *Miller* should apply categorically to offenders between the ages of 18 and 21, reasoning that while the Supreme Court has "unmistakably instructed that youth matters in sentencing," it nevertheless has not "extended its reasoning to young adults age 18 or over." (Internal quotation marks omitted.) *Id.* ¶¶ 54, 56. The court stressed that "the line drawn by the Supreme Court at age 18 was not based primarily on scientific research" but, rather, was a societal distinction that is not necessarily affected by new research findings and that "claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected." *Id.* ¶¶ 60-61 (citing *United States v. Williston*, 862 F.3d 1023, 1039-40 (10th Cir. 2017), *United States v. Marshall*, 736 F.3d 492, 500 (6th Cir. 2013), and *People v. Argeta*, 149 Cal. Rptr. 3d 243, 245-46 (Ct. App. 2012)).

¶ 30    In analyzing the defendant's as-applied challenge under the proportionate penalties clause, the court found it to be "premature" and instructed that such a claim was more appropriately resolved under the Act than on direct appeal so that evidence could be presented as to the defendant's specific characteristics. *Id.* ¶¶ 46, 48. The court reasoned that an as-applied claim is "dependent on the specific facts and circumstances of the person raising the challenge." *Id.* ¶ 39. Accordingly, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotations omitted.) *Id.* The court also reasoned that any as-applied challenge to the eighth amendment would fail for the same reasons. *Id.* ¶ 53.

¶ 31    In *People v. House*, 2019 IL App (1st) 110580-B, after the supreme court instructed us to reconsider in light of *Harris* (see *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order)), this court held that a 19-year-old offender's mandatory life sentence was unconstitutional under the proportionate penalties clause as applied to the defendant. *House*, 2019 IL App (1st) 110580-B. We reasoned that "[w]hile [the] defendant was not a juvenile at the time of the offense, his young age of 19 is relevant under the circumstances of this case" and noted that the defendant's "sentence involved the convergence of the accountability statute and the mandatory natural life sentence." *Id.* ¶ 46. We stressed that "[t]here was no evidence that [the] defendant helped to plan the commission but instead took orders from higher ranking [members of his gang]" and served only as a lookout. *Id.* The *House* court also noted:

> "The trial court was also precluded from considering the goal of rehabilitation in imposing the life sentence, which is especially relevant in [the] defendant's case. Given [the] defendant's age, his family background, his actions as a lookout as opposed to being the

actual shooter, and lack of any prior violent convictions, we find that [the] defendant's mandatory sentence of natural life shocks the moral sense of the community." *Id.* ¶ 64. The court remanded the case for resentencing so the circuit court would have "the ability to consider the relevant mitigating factors prior to imposing a sentence of such great magnitude." *Id.* ¶ 65. Our supreme court has recently granted the State's petition for leave to appeal from the decision that we issued in *House* following the supreme court's 2018 remand on a supervisory order. *People v. House*, No. 125124 (Ill. Jan. 29, 2020) (supervisory order).

¶ 32    In the wake of our second decision in *House*, we have issued several opinions that have resolved as-applied challenges under the proportionate penalties clause by focusing on whether sentencing was mandatory or discretionary and how actively a defendant participated in the crime. See, *e.g.*, *People v. Handy*, 2019 IL App (1st) 170213, ¶¶ 1, 41 (an 18-year-old defendant who actively participated in the offense and received a discretionary sentence was not entitled to a new sentencing hearing); *People v. Ramsey*, 2019 IL App (3d) 160759, ¶¶ 22-23 (proportionate penalties claim failed where 18-year-old defendant was the sole actor in the offense).

¶ 33    *Harris* and *House*, while certainly an expansion of the *Miller* protections, do not support Mr. Humphrey's claim here that the circuit court erred in denying him leave to file a successive petition. Both cases dealt with individuals who were between 18 and 21. Mr. Humphrey can point to no case in which an Illinois court has recognized that a life sentence imposed on a young adult—21 or older as Mr. Humphrey was—is unconstitutional as applied to that offender under the proportionate penalties clause or the eighth amendment. The cases he cites, from Illinois or from other states, all involve teenaged offenders. See *Harris*, 2018 IL 121932, ¶ 1 (18 years old); *Thompson*, 2015 IL 118151, ¶ 4 (19 years old); *House*, 2019 IL App (1st) 110580-B, ¶ 17 (19 years old); *Cruz v. United States*, No. 11-CV-787 (JCH), 2018 WL 1541898, at *1 (D. Conn. Mar.

29, 2018) (18 years old); *State v. O'Dell*, 358 P. 3d 359, 360 (Wash. 2015) (*en banc*) (18 years old); *cf. People v. Suggs*, 2020 IL App (2d) 170632, ¶¶ 30-44 (summary dismissal at the first stage of an initial postconviction petition where the 23-year-old defendant raised eighth amendment and proportionate penalties challenges to his *de facto* life sentence). The evolving science on brain development may support such claims at some time in the future, but for now individuals who are 21 years or older when they commit an offense are adults for purposes of a *Miller* claim.

¶ 34    While 21 is undoubtedly somewhat arbitrary, drawing a line there is in keeping with other aspects of criminal law and society's current general recognition that 21 is considered the beginning of adulthood. In Illinois, a person under the age of 21 when he or she commits first degree murder is now eligible for parole review after serving 20 or more years of his or her sentence. 730 ILCS 5/5-4.5-115 (West Supp. 2019). The Illinois legislature has also prohibited the sale of nicotine and tobacco products to persons under 21 (720 ILCS 675/1 (West Supp. 2019)), prohibited the sale of alcohol products to persons under 21 (235 ILCS 5/6-16 (West 2016)); and made possession of a firearm by those under the age of 21 an aggravating factor for aggravated unlawful use of a weapon. (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2016)).

¶ 35    We also note that even if there were some basis for an individual aged 21 or older at the time of the offense to raise an as applied *Miller*-type claim under special circumstances, Mr. Humphrey's circumstances would not appear to meet that criteria. Mr. Humphrey stands in stark contrast, for example, to the defendant in *House*, where we found such special circumstances In *House*, the court stressed the mandatory nature of the sentence, which cut off the court's ability to consider the defendant's youth and the minor role the defendant played as a lookout. *House*, 2019 IL App (1st) 110580-B, ¶ 46. Mr. Humphrey received a discretionary sentence, with the court making a specific finding, based on all of the evidence presented, that Mr. Humphrey was beyond

rehabilitation. Further, Mr. Humphrey was not a mere lookout. He played an active role in the crimes committed, including raping Ms. Gordon. The court in *House* also noted the defendant's lack of prior violent offenses. *Id.* ¶ 63. Mr. Humphrey, in contrast, was adjudicated a delinquent for armed robbery and murder.

¶ 36    Accordingly, under the current state of the law, Mr. Humphrey's claim cannot meet the cause-and-prejudice standard for an as-applied challenge under either the eighth amendment or the proportionate penalties clause.

¶ 37                                IV. CONCLUSION

¶ 38    For the above reasons, we affirm the circuit court's denial of Mr. Humphrey's motion for leave to file a successive postconviction petition.

¶ 39    Affirmed.

---

**No. 1-17-2837**

---

| | |
|---|---|
| **Cite as:** | *People v. Humphrey*, 2020 IL App (1st) 172837 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 82-CR-00761; the Hon. James Michael Obbish, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Ashlee Johnson, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People. |

---