2020 IL App (1st) 172391-U

No. 1-17-2391

SIXTH DIVISION
November 13, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Criminal Division. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 94 CR 19526 (01) |
| | ) | |
| BERNARD FOSTER, | ) | Honorable |
| | ) | Thomas V. Gainer, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GRIFFIN delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

ORDER

¶ 1    *Held*: There exists no arguable basis for invalidating as unconstitutional the 95-year sentence imposed upon defendant for a crime he committed at the age of 21.

¶ 2    Defendant Bernard Foster confessed to shooting and killing victim Mark Peters in 1994. He was arrested and charged with the offense of first degree murder. After a jury trial, he was convicted and sentenced to 95 years in prison. Defendant filed a direct appeal, challenging in part the trial court's sentencing determination as an abuse of discretion. We affirmed the trial court's judgment in 1998. Nineteen years later, in 2017, defendant filed a *pro se* post-conviction petition,

arguing in part that his sentence violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties of the Illinois Constitution (Ill. Const. art I, § 10). The trial court dismissed the petition as frivolous and patently without merit. Defendant appeals, and claims the trial court committed reversible error. We affirm.

¶ 3                                BACKGROUND

¶ 4     Defendant was tried before a jury for murder on March 5, 1996. Chicago Police Officer Robert Bell testified that he responded to a "shots-fired" call at the location of 4208 South Calumet Avenue on July 8, 1994, at 10:45 p.m. He entered the building and found victim Mark Peters (Peters) lying faceup on the first-floor stairway. Peters' body was riddled with gunshot wounds and he was non-responsive. Officer Bell called an ambulance and Peters was transported to Cook County Hospital. Officer Bell saw several shell casings and fired bullets at the scene. He recovered a knife next to Peters' body.

¶ 5     Evidence Technician Thomas Bachelder of the Chicago Police Department testified that he processed the crime scene at 4208 South Calumet Avenue on July 8, 1994, and recovered five .380 caliber bullet cartridge cases, four bullets and a steel knife. The parties then stipulated that, if called to testify, Paramedic Tazny would indicate that he transported Peters to Cook County Hospital on the night of July 8, 1994, and that Peters was non-responsive and lacked a pulse.

¶ 6     Gregory Toler testified that he was friends with defendant and that defendant went by the nickname "Yogi." Toler and defendant belonged to the Gangster Disciples street gang. In July 1994, Toler heard multiple gunshots coming from the direction of an apartment building on 42nd Street and Calumet Avenue. Toler then observed fellow gang members Lazarus "Zeke Cool" Smith (Larazus), Anthony "Pooh" McKey (McKey), and Jomo Burkes (Burkes) run out of the

building. Chicago Police Detective Thomas Argenbright testified that he interviewed Toler, and that Toler told him that he also saw defendant run out of the building.

¶ 7     Detective James Jones of the Chicago Police Department testified that he arrived at 4208 South Calumet Avenue on July 8, 1994, and spoke with several individuals who told him that Lazarus and "Yogi" were the last people seen with Peters. Detective Jones located Lazarus and placed him under arrest on July 12, 1994. Detective Paul Mack testified that he responded to a call about an aggravated battery at 12:15 p.m. on July 20, 1994. It turned out that defendant was involved in an alleged offense and Detective Mack placed him under arrest. Defendant was transported to the police station and agreed to waive his *Miranda* rights. Defendant then spoke with Chicago Police Detective Gregory Holmes.

¶ 8     Detective Holmes testified that defendant first stated that he went to 4208 South Calumet Avenue on July 8, 1994, to "buy a bag of reefer." A fight broke out between McKey, Lazarus and someone he did not know. Defendant stated that he heard someone yell, "he's got a gun," and then heard several gunshots. Defendant ran out of the building and did not know who fired the shots. Detective Holmes told defendant that his statement was inconsistent with the statement given by Lazarus, but defendant stuck to his story. After a conversation with an assistant state's attorney, however, defendant broke down.

¶ 9     Assistant State's Attorney Laura Forrester (ASA Forrester) testified that she interviewed defendant at the police station and that he waived his *Miranda* rights and agreed to speak with her. Defendant initially restated his previous account of the events occurring on the night of July 8, 1994, but then paused for several minutes and started to cry. Defendant confessed to shooting Peters and reduced his statement to writing. The State introduced the defendant's written statement into evidence. It was admitted and published to the jury at trial.

¶ 10    In his written statement, defendant indicated that he was 21-years-old and went to 4208 South Calumet Avenue on July 8, 1994, to buy marijuana. Defendant, McKey, Burkes and Lazarus, all belonged to the Gangster Disciples street gang. They were sitting on the porch and Peters told them to leave the building. Lazarus later accused Peters of stealing his beeper and they all got into a fight. Peters ran into the basement to get away and then returned with a knife. Defendant shot Peters, who turned away from defendant, and kept shooting him until the gun was empty.

¶ 11    The State concluded its case-in-chief with the testimony of Cook County Deputy Medical Examiner Barry Lifshultz, who performed an autopsy on Peters. Examiner Lifshultz testified that Peters sustained five gunshot wounds to the body and that one of the bullets pierced Peters' lung and aorta. Peters died from his wounds and his injuries were consistent with having been shot in the back. The State rested, and defense counsel moved for a directed verdict. The motion was denied.

¶ 12    During closing argument, the State told the jury that defendant killed Peters because he refused to allow his building to be "used by the Gangster Disciples to sell drugs." The State argued that there was no evidence that Peters attacked defendant first and emphasized the medical evidence indicating that Peters was shot in the back. Defense counsel argued that his client shot Peters in self-defense and did so only after Peters he charged at him with a knife. Defense counsel asked the jury to return a verdict of not guilty.

¶ 13    The jury was given instructions on self-defense, imperfect self-defense, and provocation. Following deliberations, the jury rejected defendant's claim of self-defense and found him guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 1994)). Defendant unsuccessfully moved for a new trial.

¶ 14      The trial court held a sentencing hearing on May 8, 1996. The State called Chicago Police Officers Stanley Gas and Martin Ryczek, who testified that they separately arrested defendant for the possession of a stolen motor vehicle on March 9, 1991, and August 23, 1990. Certified statements of conviction were entered into the record. Peters' wife and sister gave statements about the impact Peters' death had upon their lives. Defense counsel argued in mitigation that his client grew up without a father and lacked that a "guiding force" in his life. Counsel characterized the State's request that defendant serve "100 years" as "cruelty." Defendant in allocution stated that he was sorry for what he had done. The trial court sentenced defendant to 95 years in prison.

¶ 15      Defendant challenged his conviction and sentence in a direct appeal filed on May 8, 1996. Defendant raised several arguments and pertinent here, took the position that his sentence was excessive. Defendant specifically argued that "his age of 21 years at the time of the offense and his criminal record of three prior convictions for stolen motor vehicles should have mitigated his sentence." We considered defendant's arguments, including the claim that his sentence was excessive in light of his age, and rejected them. On August 25, 1998, we entered an opinion affirming the judgment of the Circuit Court of Cook County.

¶ 16      Years later, on July 3, 2017, defendant filed a *pro se* post-conviction petition. Defendant claimed that his appellate counsel was constitutionally ineffective, the trial court erred in sentencing him to an extended term, and his sentence violated the United States and Illinois Constitutions. In challenging the constitutionality of his sentence, defendant pointed to research indicating that "the frontal cortex of the brain is not fully formed until a person reaches his mid-twenties" and claimed the trial court failed to consider his "youth" and its "attendant circumstances." On August 17, 2017, the trial court entered an eight-page order dismissing

defendant's petition as frivolous and patently without merit. Defendant filed a timely notice of appeal on September 12, 2017.

¶ 17    On appeal, defendant argues that the trial court was incorrect to dismiss his petition because he advanced, at the very least, an arguable basis for invalidating his sentence as violative of the United States and Illinois Constitutions.

¶ 18                                    ANALYSIS

¶ 19    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) (Act) provides a criminal defendant the means to redress substantial violations of his constitutional rights in his original trial or sentencing. *People v. Pitsonbarger,* 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not an appeal from the judgment of conviction, but rather a collateral attack on the trial court proceedings. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 44. Therefore, issues raised and decided on direct appeal are barred by *res judicata,* and issues that could have been raised on direct appeal, but were not, are forfeited. *Id*., ¶ 45.

¶ 20    The postconviction petition process in Illinois has three stages. *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 31. At the first stage, the trial court must independently review the petition, take the allegations as true, and determine whether the petition is frivolous or is patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009); 725 ILCS 5/122-2.1(a)(2) (West 2016)). A petition may be summarily dismissed as frivolous or patently without merit only if it has no arguable basis either in law or in fact. *People v. Tate*, 2012 IL 112214, ¶ 9. We review the dismissal of a post-conviction petition at the first stage *de novo*. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 21    Defendant claims the trial court at least arguably violated the United States and Illinois Constitutions when it sentenced him to a 95-year prison term without first considering his alleged

"youth" and its "attendant circumstances." He asks us to reverse the summary dismissal of his petition so that he can proceed in the trial court and eventually obtain a new sentencing hearing.

¶ 22     Defendant's request for sentencing relief in the trial court was based entirely upon two cases: (1) *Miller v. Alabama*, 567 U.S. 460 (2012), which held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments"; and (2) and *People v. Harris*, 2016 IL App (1st) 141744, *aff'd in part and rev'd in part*, 2018 IL 121932, which employed the analysis in *Miller* to hold that a 76-year sentence imposed upon an 18-year-old defendant violated the proportionate penalties clause of the Illinois Constitution. Defendant recognizes that *Harris* was reversed in pertinent part by the Illinois Supreme Court after he filed his petition, but maintains that the Court's decision "left the door open for individuals like [him] to raise *as-applied* challenges to the constitutionality of their sentences under the Post-Conviction Hearing Act even though they find themselves on the 'adult' side of the traditional dividing line between adults and children."

¶ 23     We hold that *Miller* does not apply—by way of its analysis or holding—to this case. Defendant was not a juvenile when he shot and killed Peters, nor was he sentenced to life in prison without parole for having taken Peters' life. Defendant was rather 21-years-old and received a parole-eligible sentence. Because *Miller* explicitly held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments" (*Miller*, 567 U.S. at 489) and the Illinois Supreme Court reaffirmed that holding in *Harris* (2018 IL 121932, ¶ 61 ("for sentencing purposes, the age of 18 marks the present line between juveniles and adults")), defendant's claim that his sentence violates the United States Constitution is baseless.

¶ 24    There further exists no basis for extending the analysis in *Miller* to the facts in this record. As set out above, defendant based his state constitutional claim for sentencing relief on the portion of *Harris* that was later reversed. See 2018 IL 121932, ¶ 63. But reversal aside, *Harris* applied the analysis in *Miller* to a defendant who "turned 18 just a few months before the shooting," not a 21-year-old. Without question, the Illinois Supreme Court expressly provided when it reversed *Harris* that the defendant's as-applied state constitutional claim was "more appropriately" suited to a collateral proceeding. See 2018 IL 121932, ¶ 48. Defendant seizes this language and maintains that it provided the blueprint for his claim embodied in the instant petition. But again, the Court was addressing the facts in the record before it and specifically, the as-applied constitutional claim of a defendant who "turned 18 just a few months" before he killed one victim and tried to kill another. *Id*.

¶ 25    The threshold argument raised by defendant here, that the Illinois Supreme Court was referring to him and his circumstances when it envisioned a potential collateral attack upon the trial court's sentencing determination in *Harris*, is not only misplaced, it reads the most important fact out of the opinion—the defendant's age. We note that the Illinois Supreme court was not presented with and did not address in *Harris* the constitutionality of a lengthy sentence imposed upon an adult, 21 years of age or older. Indeed, the "traditional dividing line between adults and children," as defendant phrases it, becomes more arbitrary when confronted with a defendant who has just stepped over it. But less so in the situation here, where defendant stepped over the line many years before he shot Peters repeatedly in the back and killed him.

¶ 26    Regardless of arbitrariness, the line between childhood and adulthood has been drawn by the United States Supreme Court (see *Roper v. Simmons*, 543 U.S. 551, 574 (2005)), the Illinois Supreme Court (see *Harris*, 2018 IL 121932, ¶ 61) and the Illinois legislature (see 730 ILCS 5/5-

4.5-105 (West 2016)). Even if defendant could persuade us that the Illinois Supreme Court was referring to him when it discussed a potential collateral constitutional attack in *Harris* (and he cannot), his state constitutional claim would still fail. Defendant has not cited in his appellate briefs (and there does not exist) any authority to support the claim that the trial court was constitutionally obligated to consider his alleged "youth" and its "attendant circumstances" before it sentenced him to serve 95 years in prison for an offense he committed at the age of 21.

¶ 27 In fact, the prevailing authority in Illinois holds to the contrary. See *People v. Humphrey*, 2020 IL App (1st) 172837, ¶¶ 33-36 (holding that the 21-year-old defendant could not, "under the current state of the law," meet the cause-and-prejudice standard for an as-applied challenge under either the eighth amendment or the proportionate penalties clause); see also *People v. Suggs*, 2020 IL App (2d) 170632, ¶¶ 30-44 (affirming the trial court's first-stage dismissal of an initial postconviction petition where the 23-year-old defendant raised eighth amendment and proportionate penalties challenges to his sentence). Accordingly, defendant has failed to set forth an arguable basis in law or in fact to support his claim that the trial court's sentencing determination violated the Illinois Constitution.

¶ 28 Because the constitutional challenges set forth in the instant petition fail to establish an arguable basis for sentencing relief, the trial court was correct to summarily dismiss it at the first stage of the post-conviction proceeding. The judgment of the Circuit Court of Cook County must be affirmed.

¶ 29                                    CONCLUSION

¶ 30 Accordingly, we affirm.

¶ 31 Affirmed.