2021 IL App (1st) 201016-U

SECOND DIVISION
November 23, 2021

No. 1-20-1016

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 95 CR 11734 |
| JOHNNY ENGLISH, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Timothy Joseph Joyce, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**O R D E R**

¶ 1    *Held*: We dismiss the petitioner's appeal where the record does not establish this court's jurisdiction.

¶ 2    The petitioner, Johnny English, appeals from the circuit court's denial of his *pro se* request for leave to file his second successive postconviction petition pursuant to the Postconviction Hearing Act (725 ILCS 5/122-1 et seq. (West 2018)). On appeal, the petitioner contends that he

sufficiently established cause and prejudice with respect to his constitutional challenge to his 70-year *de facto* life sentence, imposed for a crime he committed when he was 18 years old, under both the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). For the following reasons, we find that we lack jurisdiction to consider the petitioner's appeal.

¶ 3                                    I. BACKGROUND

¶ 4     Because the record before us is voluminous and the facts of the offense are fully set out in our order affirming the petitioner's conviction and sentence on direct appeal (*People v. English*, No. 97-2365 (unpublished order pursuant to Illinois Supreme Court Rule 23) (Feb. 19, 1999) (*English I*)), we set forth only those facts and procedural history relevant to the resolution of the issues here.

¶ 5     In 1995, together with codefendant James Davis, the 18-year-old petitioner was charged with, *inter alia*, armed robbery, first degree murder and attempted first degree murder for his involvement in the death of Frank Klepacki and the shooting of Casey Klepacki. The petitioner proceeded with a bench trial, which was held concurrently with codefendant Davis's severed jury trial.

¶ 6     The following relevant evidence was adduced from the petitioner's pre-trial confession and the eyewitness testimony of the surviving victim, Casey Klepacki. At approximately 9:30 p.m. on March 19, 1995, the petitioner and codefendant Davis were selling drugs outside of a house on the west side of Chicago. Codefendant approached the petitioner, informing him he had just sold drugs inside the house to "two white dudes" who would be "sweet victims" because they had a lot of money and would be easy to rob. The petitioner and codefendant then determined that they would rob the two victims, Casey and Frank, by stationing themselves outside of a gangway on either

side of the exit. When Casey and Frank exited the building, Casey waved at the petitioner, whom he knew from prior encounters.

¶ 7    The petitioner and codefendant then drew their guns, beat the victims about their heads with the guns, and pulled them towards a porch at the back of the building. The petitioner pulled Frank up onto the porch, forcing him to lie down. Meanwhile, codefendant, put his gun to Casey's head, ripped a necklace from Casey's neck and forced him to remove his shoes and socks to look for money. When he found none, the petitioner told Casey to remove his pants. Casey complied, after which he said, "If you're going to kill us, why don't *** you just do it?" The petitioner apparently tried to shoot Frank, but the gun misfired. Casey stated that after he heard the shot, he saw the petitioner holding Frank in a headlock with a smoking gun in his hand.

¶ 8    The petitioner next pointed the gun at Casey while the codefendant patted him down. Afterwards, the petitioner shot Casey in the back. Casey ran but fell and pretended to be dead while codefendant, still holding his gun, approached to check on him. After codefendant left, Casey fled. As he did so, he heard two more gunshots.

¶ 9    Evidence at trial further established that Frank's body was discovered in the gangway with a trail of blood leading from the porch. The autopsy revealed that he was shot at close range and in the chest.

¶ 10    In his statement to the police, the petitioner admitted to the robbery but claimed that codefendant was the shooter.

¶ 11    William Wilson, who had two prior convictions for unlawful use of a weapon and one for possession of a controlled substance with intent to deliver, also testified at the petitioner's trial. He stated that on the day of the incident, he heard gunshots and saw the petitioner run past him. Wilson followed the petitioner and watched as the petitioner attempted to unjam a handgun. When Wilson

eventually caught up with the petitioner, the petitioner told him that he and codefendant had tried to rob two men and that he had killed one and shot the other.

¶ 12    The petitioner was found guilty of first-degree murder, attempted first degree murder and armed robbery.

¶ 13    The trial court found that the petitioner was eligible for the death penalty because he had committed the murder during an armed robbery. A hearing was then held to determine whether the petitioner should receive the death penalty. At this hearing, a Cook County jail guard testified that while the petitioner was awaiting trial, he and another inmate beat a third inmate who had allegedly sexually assaulted them. The beating inflicted a broken nose and broken eye socket on the inmate. The attack left blood splattered on the walls and pools of blood on the floor of the cell. A second guard testified that on another occasion the petitioner refused to leave a visiting area when told his time had expired. When guards attempted to forcibly remove him, he struck two of them in the face. To counter this testimony, the petitioner presented the testimony of the woman who was visiting him that day and who asserted that a guard had struck the petitioner first and that the petitioner had only struck him back in defense. Evidence was also introduced that on a third occasion the petitioner refused to follow an order to leave an area of the jail and swore at and threatened a prison guard. In addition, the State submitted several victims' impact statements.

¶ 14    In mitigation, the petitioner's mother testified that the petitioner had a learning disability and dropped out of high school because he was teased by other students and because he could not deal with his father's death from cancer. Through stipulated testimony, the petitioner introduced the opinion of a clinical psychologist that his I.Q. was around 70, which was "borderline intellectual functioning." The psychologist further opined that the petitioner had a learning disability, dyslexia, and was immature and hyperactive. Defense counsel further argued that the

death penalty should not be imposed because of the petitioner's young age, and the fact that he was probably induced into committing the crime by his much older codefendant (who was 30 years old).

¶ 15     After hearing all the evidence, the circuit court elected not to impose the death penalty. Instead, the court found that the crimes were "brutal and heinous" and imposed an extended term sentence of 70 years' imprisonment for first-degree murder, to be served concurrently with a 30-year sentence for attempt first-degree murder and another 30-year sentence for armed robbery.

¶ 16     The petitioner appealed contending that the circuit court's finding that the crimes were "brutal and heinous" was improper and that the sentences were excessive. We rejected the petitioner's arguments and affirmed his conviction and sentence on appeal. See *English I*, No. 97-2365 (unpublished order pursuant to Illinois Supreme Court Rule 23) (Feb. 19, 1999).

¶ 17     On December 10, 1999, the petitioner filed a *pro se* postconviction petition alleging, *inter alia*, that his trial counsel was ineffective for failing to investigate two alibi witnesses and that appellate counsel was ineffective for failing to raise this issue on direct appeal. After the State filed a motion to dismiss, postconviction counsel supplemented the petitioner's *pro se* petition with an additional claim, *i.e.*, that his sentence was improper under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed the petition and this court subsequently affirmed that dismissal. See *People v. English*, No. 1-02-0280 (unpublished order pursuant to Illinois Supreme Court Rule 23) (March 19, 2004).

¶ 18     On February 16, 2005, the petitioner filed his first successive postconviction petition, alleging, *inter alia*, that his trial counsel was ineffective for failing to: (1) advance an alibi defense; and (2) call two witnesses who would have challenged the testimony of Wilson and shown that he had perjured himself. In support, the petitioner attached affidavits from Farris Skinner and Charles

Streeter, who alleged his innocence and explained that on the night of the murder the petitioner was with them at his mother's house. The petitioner further attached his own affidavit and affidavits from his sister Charlotte English and Tomaine Davis attesting that Wilson had told them that the prosecutor had forced him to lie at the petitioner's trial.

¶ 19    The State filed a motion to dismiss, but the circuit court found that the two claims should be advanced to an evidentiary hearing. The hearing was held on March 18, 2008, after which the circuit court dismissed the petition, finding that the petitioner's allegations were "not supported by credible evidence."

¶ 20    On July 10, 2020, the petitioner filed the instant *pro se* motion for leave to file his second successive postconviction petition. Therein, citing to *Miller v. Alabama,* 567 U.S. 460 (2012), *People v. House*, 2019 IL App. (1st) 110580-B, and *People v. Buffer*, 2019 IL 122327, he argued that he was entitled to a new sentencing hearing based on the changes in the law regarding the sentencing of juvenile offenders and emerging adults. The petitioner asserted that his sentence of 70 years' imprisonment was a *de facto* life sentence and that it violated both the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). In discussing the characteristics of youth that should have been considered in rendering a just sentence as applied to him, the petitioner cited to his learning disability at the time of the offense, the influence of his 30-year-old codefendant, and the fact that he committed the crime just two months after his 18th birthday.

¶ 21    On August 3, 2020, the circuit court denied the petitioner's motion for leave to file his successive postconviction petition. In its written order, the circuit court explained that the petitioner had failed to meet the cause and prejudice test. The court found that the petitioner's sentence did not violate the eighth amendment (U.S. Const., amend. VIII) because he was 18 years

old at the time of the offense and the protections outlined in *Miller* extend only to juvenile offenders. The court further found that the petitioner's sentence did not shock the moral sense of our community under the proportionate penalties clause (Ill. Const. 1970, art I, § 11) because the petitioner was an active participant in the crime and was not coerced or encouraged by any other, older individuals, notwithstanding his intellectual disability.

¶ 22     The petitioner now appeals.

¶ 23                                    III. ANALYSIS

¶ 24     On appeal, the petitioner contends that the circuit court erred in denying him leave to file his second successive postconviction petition, where he sufficiently stated cause and prejudice with respect to his claims that his 70-year sentence is unconstitutional as applied to him under the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11).[1]

¶ 25     Before addressing the petitioner's argument, however, we must first address the State's contention that we are without jurisdiction to consider this appeal because it was untimely filed.

¶ 26     For the following reasons, we agree with the State and find that we are without jurisdiction to consider this appeal.

¶ 27     It is axiomatic that "the filing of a notice of appeal 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2008) (quoting *Niccum v. Botti,*

---

[1] We note that in his opening brief the petitioner initially argued that his 70-year sentence was unconstitutional as applied to him both under the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). Both arguments were premised on the fact that the sentence was an unconstitutional *de facto* life sentence and that it was improperly imposed without any consideration of his age and youthful characteristics. However, in his reply brief the petitioner subsequently conceded that under the recent decision of our supreme court in *People v. Dorsey*, 2021 IL 123010, ¶¶50-65, his eligibility for day-for-day good conduct credit negates any argument that his sentence is an unconstitutional *de facto* life sentence. Accordingly, the petitioner acknowledged that he has no argument under the eighth amendment (U.S. Const., amend. VIII). Nonetheless, he asks us to permit him to proceed with his as-applied proportionate penalties challenge to his sentence, because that sentence "shocks the moral sense of our community." See Ill. Const. 1970, art I, § 11.

*Marinaccio, DeSalvo & Tameling, Ltd.,* 182 Ill. 2d 6, 7 (1998). Accordingly, unless a notice of appeal is properly filed, the reviewing court has no jurisdiction and is obligated to dismiss the appeal. *Id.* Indeed, our supreme court has held that "the appellate and circuit courts of this state *must* enforce and abide by" the supreme court rules, and that they do not have the authority to excuse compliance with the filing requirements of the supreme court rules governing appeals. (Emphasis in original.) *People v. Lyles*, 217 Ill. 2d 210, 216 (2005). Whether a court has jurisdiction is a question of law and is reviewed *de novo*. *People v. Salem*, 2016 IL 118693, ¶ 11.

¶ 28    Pursuant to Illinois Supreme Court Rule 606(b) "the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgement appealed from." Ill. S. Ct. R. 606 (b) (eff. July 1, 2017). According to Illinois Supreme Court Rule 373 (Ill. S. Ct. R. 373 (eff. July 1, 2017)), "briefs or other documents required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court." However, "[i]f received after the due date, the time of mailing by an incarcerated, self-represented litigant shall be deemed the time of filing" and "[p]roof of mailing shall be as provided in Rule 12." *Id.* This rule also applies to the notice of appeal filed in the trial court. *Id.*

¶ 29    Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017) provides that in the case of service by mail by an incarcerated *pro se* litigant, service is proved by certification under section 1-109 of the Code of Civil Procedure (Code) (735 ILCS 5/1-109 (West 2018)) of the person who deposited the document in the institutional mail, "*stating the time and place of deposit and the complete address to which the document was to be delivered.*" (Emphasis added.)

¶ 30    Thus, when a notice of appeal is filed outside the 30-day period following the order being appealed, the notice is deemed timely if the petitioner attaches a proof of service in compliance with Rule 12(b)(6) (eff. July 1, 2017) showing that it was mailed to the clerk of the circuit court

within the 30-day period. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 215-16 (2009) (reasoning that the proof of mailing establishes "the date the document was timely mailed to confer jurisdiction on the appellate court").

¶ 31    In the present case, the petitioner is appealing from the final judgment of the circuit court entered on August 30, 2020. As such, he was required to file his appeal by September 2, 2020. The notice of appeal, however, is file-stamped September 18, 2020, which is outside of the requisite 30-day period. Accordingly, for this court to have jurisdiction, the record must establish the petitioner timely mailed his petition in accordance with Rules 373 and 12(b)(6) regarding proof of service. Specifically, the record must contain a proof of service of mailing prior to the expiration of the 30-day period, *i.e.,* a certification in compliance with section 1-109 of the Code (735 ILCS 5/1-109 (West 2018)).

¶ 32    The petitioner here concedes that he did not file a proper certification pursuant to section 1-109 of the Code (735 ILCS 5/1-109 (West 2018)). Nonetheless, he argues that his appeal was timely because the postmark on the envelope for his notice of appeal indicates that he mailed that notice on September 1, 2020, prior to the expiration of the 30 days. In doing so, the petitioner relies on the decision in *People v. Humphrey*, 2020 IL App (1st) 172837, arguing that a postmark may serve as sufficient certification of a timely filing by a self-represented litigant residing in prison. For the following reasons, we disagree and find that case inapposite.

¶ 33    In *Humphrey*, the defendant did not file a section 1-109 certification proof of service with his notice of appeal. *Humphrey*, 2020 IL App (1st) 172837, ¶18. Instead, he relied solely on the envelope containing his notice of appeal, which was postmarked before the 30-day due date. *Id*. The appellate court found that it had jurisdiction based solely on that postmark. *Id*. The court held that because the postmark reflected that the notice of appeal had been timely mailed, it had

jurisdiction over the appeal. *Id*. at ¶21. The court reasoned that to hold the postmark inadequate would be to ignore the fact that the notice of appeal had, in fact, been mailed in a timely fashion. *Id*. As the court explained:

> "Requiring a court to overlook a clearly legible postmark showing that a document was processed by a disinterested third party, such as the post office, on or before the date by which the document was required to be mailed is to disregard the best, most competent evidence of the latest date of mailing consistent with the pro-mailing policy of Rule 373." *Id*. at ¶18 (quoting *People v. Hansen*, 2011 IL App (2d) 081226, ¶14) (internal quotation marks omitted).

¶ 34     We acknowledge the holding in *Humphrey*, but note that after it was decided, in *People v. Tolbert*, 2021 IL App (1st) 181654, ¶ 11, another division of this appellate court found that under the same circumstances we lacked jurisdiction to consider a defendant's appeal despite the existence of a postage meter stamp indicating that the defendant had mailed the notice of appeal before the expiration of the 30-days.

¶ 35     In determining whether a postmark or a postage meter stamp could be used in lieu of a section 1-109 certification, in *Tolbert*, we looked to the plain language of Rule 373 and the history of its amendments. We explained that, as originally written, Rule 373 expressly "permitted proof of mailing to be evidenced by a postmark." *Id*. ¶ 16 (citing *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶ 13). However, because of problems with "illegible postmarks, and in some cases, delays in affixing the postmarks" Rule 373 was amended in 1981, to eliminate postmarks as a method of proof, and instead to "require proof of mailing by an attorney's certificate or a nonattorney's affidavit." *Id*. ¶ 16 (citing Ill. S. Ct. R. 373, Committee Comments (rev. Jan. 5, 1981)). We further noted that a subsequent amendment to the rule in 1993, further incorporated

the requirements of proof of service under Rule 12. *Id.*

¶ 36    Noting as "significant" the fact that the amendments to Rule 373 eliminated postmarks as proof of mailing "entirely, even legible ones," we held that under the plain language of Rule 373, jurisdiction was proper only where the record contains a certification verifying the date, time, and address for delivery. *Id.* ¶¶ 20-21. As we explained:

> "The clearest indication that the rule intended to avoid any kind or quality of postmarks is its complete absence in the rules, with or without a qualifier. At the time of the rule's amendment, the goal was to eliminate the need to debate the question of timeliness on those occasions when the postmark was not legible. It was not the case that all postmarks were illegible. To read into the rule an exception for 'legible postmarks' is to revert to a time when that method of proof was discarded in exchange for the certainty that Rule 12(b)(6) now provides." *Id.* ¶ 20.

¶ 37    Considering the history and express purpose of Rule 373, we found that the potential availability of other "objective proof of timely mailing" was irrelevant in establishing jurisdiction. *Id.* ¶ 21. As we explained, "a determination as to whether such other proof satisfies the requirements of Rule 373 is a task which lies exclusively within the scope of our supreme court's rulemaking authority. See Ill. S. Ct. R. 3 (eff. July 1, 2017)." *Id.*  Where "the word 'postmark' and its indicia as a method of proof have long since been abandoned" and our supreme court has not "seen fit to amend the rule to permit any form of mail system generated verification absent an accompanying certification," we are not at liberty to determine which methods of proof could be presumptively or implicitly included in the court's rules. *Id.* Accordingly, we concluded that a postmark alone is insufficient to confer jurisdiction on this court. *Id.*

¶ 38    We agree with the well-reasoned analysis of *Tolbert* and find that it adequately negates the

holding in *Humphrey*. Accordingly, we reject the petitioner's invitation to follow *Humphrey* instead of *Tolbert*. Based on the plain language of Rule 373, we find that absent the certification of proof of service in the record before us, we are without jurisdiction to consider the petitioner's appeal and must dismiss it.

¶ 39    In reaching this conclusion, we reiterate that the petitioner himself concedes that he has failed to provide this court with the proper certification. Moreover, proof of service to establish the timely filing of a notice of appeal is not a task with which the petitioner lacks familiarity. Such is demonstrated by the record, which is replete with copies of past certifications, properly completed and submitted by the petitioner in compliance with our supreme court's rules.

¶ 40                                    III. CONCLUSION

¶ 41    Accordingly, because the record before us does not establish this court has jurisdiction over the petitioner's appeal, we must dismiss it.

¶ 42    Appeal dismissed.