2020 IL App (1st) 171430
No. 1-17-1430
Opinion filed June 30, 2020

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 00 CR 9450 (03) |
| GEORGE RIVERA, | ) ) | The Honorable Carol M. Howard |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant George Rivera was convicted of first degree murder and five counts of armed robbery and sentenced to a total of 55 years with the Illinois Department of Corrections. On this appeal, defendant claims that the trial court erred in denying him leave to file a successive postconviction petition. Defendant, who was 23 years old at the time of the offense, argues that the sentencing protections for juvenile offenders provided by *Miller v. Alabama*, 567 U.S. 460 (2012), should also apply to him. For the following reasons, we affirm the trial court's dismissal.

¶ 2                                    BACKGROUND

¶ 3          No issues are raised on this appeal regarding the evidence against defendant or the sufficiency of the State's evidence at trial. Thus, we summarize the trial evidence below. This court previously set forth the evidence in detail in a prior order denying defendant's direct appeal, and we incorporate that order by reference. *People v. Rivera*, No. 1-04-2164 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4          The State's evidence at trial established that, on February 13, 2000, Frederick Jamison[1] was fatally shot in the head in connection with a staged drug transaction. During the transaction, defendant and his codefendants lured Frederick Jamison and others to a specified location under the premise of selling them a large quantity of marijuana and then robbed them while pretending to be police officers. Defendant did not shoot Frederick Jamison and was convicted of the murder under a felony murder charge.

¶ 5          On February 13, 2000, at 8 p.m., Roderick and Frederick Jamison received a phone call regarding the purchase of 40 pounds of marijuana. The Jamison brothers and four of their friends drove in two separate vehicles to an auto repair shop. The friends included Corey Brown, John Smith, Jonathan Stevenson and Leroy Presley. Frederick Jamison brought $23,000 in cash with him in his white Ford Expedition SUV. Upon arrival, Frederick Jamison pulled his SUV into the garage and exited it, where codefendant Ventura Alvarez was waiting for him. Stevenson remained in the SUV with a couple of others until they heard someone yell, "Freeze, Police!" They were then forced out of the SUV by defendant, who was armed with an automatic weapon and told them to lay face down on the ground. Four or five gunmen,

_____

[1]Since the victim's brother was also involved in the events and shares the same last name, we include the first names of the Jamison brothers.

including defendant, shouted that they were police officers and ordered everyone to lay down on the floor. One of the gunmen took Stevenson's wallet, while other gunmen robbed his friends. Defendant was in the garage for only five minutes before he drove away in Frederick Jamison's SUV. The other gunmen repeatedly demanded to know the location of the cash payment. When they learned that it was in the SUV, they also left. Before leaving, one or two codefendants fired their weapons hitting Frederick Jamison in the head. After all the gunmen left, Roderick Jamison called 911 and the police arrived. Frederick Jamison later died of his injuries. After the offenders divided up the money, defendant received $2000 for his role in the offense.

¶ 6        The jury found defendant guilty of murder, aggravated vehicular hijacking, and the armed robbery of Presley, Roderick Jamison, Brown, Stevenson, and Smith. At the sentencing hearing, the trial court found that defendant was involved in the scheme and the fact that he left before the murder occurred did not affect his accountability for Frederick Jamison's death. Defendant's criminal history included prior convictions in 1998 for (1) the manufacture or delivery of more than 15 grams of cocaine, for which he received a six-year sentence, and (2) the aggravated unlawful use of a weapon, for which he received a two-year sentence, to be served concurrently with the six-year sentence.

¶ 7        After considering factors in mitigation and aggravation, the trial court sentenced defendant to 40 years for the murder plus an added 15-year firearm enhancement. The trial court also sentenced defendant to six 10-year terms for the five armed robberies and the aggravated vehicular hijacking, which were to run concurrently to each other and to the murder sentence. On appeal, this court remanded the case to the trial court to vacate the conviction and sentence for aggravated vehicular hijacking because it was used as the predicate for the felony

3

murder charge. *Rivera*, No. 1-04-2164, slip order at 33. We affirmed his other convictions and sentences. *Rivera*, No. 1-04-2164, slip order at 34.

¶ 8    On April 22, 2008, defendant filed a *pro se* postconviction petition claiming ineffective assistance of counsel and an improper indictment. On May 30, 2008, the trial court dismissed the petition as frivolous and patently without merit, and this court affirmed the dismissal. *People v. Rivera*, No. 1-08-1797 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9    On January 3, 2012, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), in which he claimed that his grand jury lacked jurisdiction. On February 10, 2012, the trial court denied the petition.

¶ 10    On February 10, 2014, defendant filed a motion for leave to file a *pro se* successive postconviction petition, claiming that a new rule of law established his legal and factual innocence based on this court's opinion in *People v. Garrett*, 401 Ill. App. 3d 238, 249 (2010) (where the government failed to prove that defendant's robber accomplices shot the victim, felony murder conviction must be vacated). On August 15, 2014, the trial court denied him leave to file it, and this court affirmed the denial. *People v. Rivera*, No. 1-14-3030 (2016) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 11    On March 10, 2017, defendant filed the current motion for leave to file a *pro se* successive postconviction petition, which the trial court summarily denied on April 13, 2017. On May 12, 2017, defendant filed a timely notice of appeal, and this appeal followed.

¶ 12                                ANALYSIS

¶ 13        Defendant claims that the trial court erred in denying him leave to file his successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)).

¶ 14                           I. Successive Petition

¶ 15        The Act provides a statutory remedy for criminal defendants who claim that their constitutional rights were violated. *People v. Edwards*, 2012 IL 111711, ¶ 21. However, our supreme court has made clear that both "the Act and our own case law" contemplate "only one postconviction proceeding." *Edwards*, 2012 IL 111711, ¶ 22. "Nevertheless, [the supreme] court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed." *Edwards*, 2012 IL 111711, ¶ 22. Those two bases are (1) a showing of cause or prejudice or (2) a claim of actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23. In the case at bar, defendant alleges only cause and prejudice, so we discuss only that basis below.

¶ 16        Under the cause-and-prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 17                          II. Standard of Review

¶ 18        "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *People v. Bailey*, 2017 IL 121450, ¶ 13; *People v. Wrice*, 2012 IL 111860, ¶ 50 (applying a *de novo* standard of review to the State's argument concerning lack of prejudice to the defendant, since these "arguments raise purely legal issues"). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *In re*

*N.H.*, 2016 IL App (1st) 152504, ¶ 50 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 19                                            III. Cause

¶ 20        A defendant "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2016). In the case at bar, defendant filed his initial postconviction petition in 2008.[2] In 2008, defendant could not have raised a specific claim based on *Miller* and its progeny where *Miller* would not be decided for another four years. See *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 108 (where defendant filed his original petition years before *Miller*, he established cause to raise a *Miller* claim since he "certainly could not have raised a claim based on a line of cases that had not even been decided yet"); see also *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 48; *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 19. Thus, we find defendant established cause.

¶ 21                                          IV. Prejudice

¶ 22        A defendant "shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016); *People v. Holman*, 2017 IL 120655, ¶ 26.

¶ 23        Defendant argues that this is a simple case for the following reasons. First, he argues that *Miller* forbids life-without-parole sentences for juveniles without special consideration

---

[2]Although defendant sought leave to file a successive postconviction petition in 2014, he was denied leave to file it, and the statute specifically refers to "his or her initial postconviction proceedings." 725 ILCS 5/122-1(f) (West 2018). The State does not argue that he lacks cause because of this 2014 petition; and any argument not raised is waived. *People v. Cardona*, 2013 IL 114076, ¶ 19 (points not argued are waived); Ill. S.Ct. R. 341(h)(7) (eff. May 25, 2018).

of their youth. See *Holman*, 2017 IL 120655, ¶¶ 43-44 (a trial court may not impose a life-without-parole sentence on a juvenile without considering some variant of the *Miller* factors). Second, *Miller* applies to juvenile life sentences whether *de facto* or *de jure*. *People v. Reyes*, 2016 IL 119271, ¶ 9. Third, a *de facto* life sentence for a juvenile is a prison sentence longer than 40 years. *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41. Fourth, *Miller* applies to juvenile life sentences whether discretionary or mandatory. *Holman*, 2017 IL 120655, ¶ 40 ("*Miller* applies to discretionary sentences"); *Buffer*, 2019 IL 122327, ¶ 27 (*Miller* applies to juvenile life sentences, whether "mandatory or discretionary"). Lastly, defendant argues that recent Illinois case law shows that the reasoning and principles behind *Miller* may apply to offenders over 18 years old. See *People v. Thompson*, 2015 IL 118151, ¶ 44 (although the denial of defendant's section 2-1401 petition was affirmed, the 19-year old "defendant is not necessarily foreclosed from renewing his as-applied [*Miller*] challenge" in a postconviction petition); *People v. Harris*, 2018 IL 121932, ¶ 1 (defendant was "18 years, 3 months of age"); *People v. House*, 2019 IL App (1st) 110580-B, ¶ 33 (defendant "had just turned 19 years old at the time" of the offense), *pet. for leave to appeal granted*, No. 125124 (Jan. 29, 2020); *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 4 (defendant was 18 years old).

¶ 24        However, defendant fails to cite any federal or Illinois caselaw or Illinois statute where an offender over 21 years old, such as defendant, received special consideration because of his age or was treated differently than an adult. At the time of the offense, defendant was six days short of his twenty-fourth birthday.[3]

---

[3]While this appeal was pending, we granted defendant's motion to cite additional authority. However, both cases cited by defendant involved under 21-year-olds. *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 1 (18 years old); *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 1 (19 years old).

¶ 25    In its brief to this court, the State argues that "recent and traditional legislative enactments support[ ] the view that 'youthful offenders' are those *under* the age of 21." For example, last year, our legislature changed the law to make a person convicted of first degree murder eligible for parole after serving only 20 years, *if* he or she was under 21 years old at the time of the offense and was sentenced after the law took effect. Pub. Act 100-1182, § 5 (eff. Jun. 1, 2019) (adding 730 ILCS 5/5-4.5-110(b)); see Pub. Act 101-288 (amending and renumbering 730 ILCS 5/5-4.5-110(b) as 730 ILCS 5/5-4.5-115(b)).[4] Urging passage of this bill, House Majority Leader Barbara Flynn Currie argued that under-21-year-olds are "young people" who "do not always have good judgment." 100th Ill. Gen. Assem., House Proceedings, Nov. 28, 2018, at 48 (statements of Representative Currie). The Juvenile Court Act of 1987 defines a "[m]inor" as "a person under the age of 21 years subject to this Act" (705 ILCS 405/1-3(10), 5-105(10) (West 2018)), while an " '[a]dult means a person 21 years of age or older" (705 ILCS 405/1-3(2) (West 2018)). Our state treats under-21-year-olds differently in other ways, such as prohibiting sales to them of alcohol (235 ILCS 5/6-16(a)(i) (West 2018)), cigarettes (Pub. Act 101-2, § 25 (eff. July 1, 2019) (amending 720 ILCS 675/1)), and wagering tickets (230 ILCS 10/18(b)(1) (West 2018)), prohibiting their gun ownership without parental permission (430 ILCS 65/4(a)(2)(i) (West 2018)), and limiting Class X sentencing for recidivist offenders to those offenders "over the age of 21 years" (730 ILCS 5/5-4.5-95(b) (West 2018)). See also *People v. Mosley*, 2015 IL 115872, ¶ 36 (a ban on handgun possession by "minors" under 21 does not violate the second amendment (internal

_____

[4]Our legislature referred to this parole review for under 21-year-olds as "youthful offender parole." 730 ILCS 5/3-3-9(a)(1.5) (West 2018).

quotation marks omitted)); 760 ILCS 20/2(1) (West 2018) (Illinois Uniform Transfers to Minors Act defines an adult as one "who has attained the age of 21 years").[5]

¶ 26    However, defendant was not under 21. Thus, any arguments that could be made based on the statutes and cases cited above do not apply to him. In addition, he had two prior felony convictions for drug trafficking and gun possession, and he committed the instant February 13, 2000, offenses shortly after his release from those 1998 convictions. Defendant's actions in this case set forth none of the immaturity or impetuosity that are the hallmarks of youth. See *Buffer*, 2019 IL 122327, ¶ 19 (the " 'hallmark features' " of youth are " 'immaturity, impetuosity, and [the] failure to appreciate risks and consequences' " (quoting *Miller*, 567 U.S. at 477)). Instead, the scheme in which he agreed to participate was a carefully planned and staged robbery—the coordinated effort of a number of offenders.

¶ 27    Defendant argues that the same considerations, which were applied to under-18-year-olds and which have been arguably extended in some cases and statutes to under-21-year-olds, should be extended further to under-24-year-olds like himself.[6] If such an extension should be made—and we are not saying that it should—it should be made by our legislature or our highest court. See *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 56 ("If our supreme court believes that our legislature's changes did not go far enough ***, that is for our highest court to decide."), *vacated on other grounds*, No. 121527 (Mar. 25, 2020); see also *Buffer*,

---

[5]We do not mean to imply that the State supports defendant's position. The State's brief explains that "the People's position" is "that the age of 21 is where societal norms generally accept the definitive line of full adulthood."

[6]In support, he cites various articles and scientific studies, such as the one this court quoted recently in *House*: " '[r]esearch in neurobiology and developmental psychology has shown that the brain doesn't finish developing until the mid-20's.' " *House*, 2019 IL App (1st) 110580-B, ¶ 55 (quoting Vincent Schiraldi & Bruce Western, *Why 21 Year-Old Offenders Should Be Tried in Family Court*, Wash. Post (Oct. 2, 2015), www.washingtonpost.com/opinions/time-to-raise-the-juvenile-age-limit/2015/ 10/02/948e317c-6862-11e5-9ef3-fde182507eac_story.html [https://perma.cc/FV36-XURC]).

2019 IL 122327, ¶ 40 ("the entity best suited to make such a determination" is "the legislature"). The supreme court and the legislature are in a better position to draw clear, predictable and uniform lines for our state. See *Buffer*, 2019 IL 122327, ¶ 29 (clear, predictable and uniform lines " 'must be drawn' " (quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005))).

¶ 28     For the foregoing reasons, we find that defendant has failed to show prejudice.

¶ 29                                   CONCLUSION

¶ 30     In conclusion, we affirm the trial court's denial of defendant's motion for leave to file his successive postconviction petition.

¶ 31     Affirmed.

---

**No. 1-17-1430**

---

| | |
|---|---|
| **Cite as:** | *People v. Rivera*, 2020 IL App (1st) 171430 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 00-CR-9450(03); the Hon. Carol M. Howard, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and David T. Harris, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |

---