NOTICE

Decision filed 09/12/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210132-U

NO. 5-21-0132

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 06-CF-428 |
| | ) | |
| CHRISTOPHER A. WATKINS, | ) | Honorable |
| | ) | Evan L. Owens, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the defendant failed to demonstrate prejudice stemming from his failure to raise an eighth amendment claim that his 45-year sentence was unconstitutional as applied to him because he had reached the age of 18 when he participated in the murder, we affirm the trial court's denial of his motion for leave to file a successive postconviction petition. Where the defendant failed to demonstrate prejudice from his failure to raise a proportionate penalties claim that his 45-year sentence was unconstitutional as applied to him because he had reached the age of 20 when he participated in the murder and the sentence does not shock the moral sense of the community, we affirm the trial court's denial of his motion for leave to file a successive postconviction petition.

¶ 2    In his underlying criminal case, the defendant was convicted of first degree murder and was sentenced to 45 years in prison. This court affirmed his conviction and sentence in *People v. Watkins*, 2014 IL App (5th) 110549-U. The defendant then filed a postconviction petition that was dismissed by the trial court. This court affirmed in *People v. Watkins*, 2019 IL App (5th) 150387-

1

U. The defendant subsequently filed a petition for leave to file a successive postconviction petition in which he alleged that because he was an emerging adult at the time of the murder, the 45-year sentence he received was an unconstitutional *de facto* life sentence. He claimed that the legal argument was not available when he filed his initial postconviction petition, and that his sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him. The defendant's argument relied on neuroscience and psychological developments showing that the juvenile brain does not stop developing until the mid-20s. He also relied upon recent cases that have cited these developments to find that juveniles and young adult defendants are less morally culpable and more likely to be rehabilitated than older defendants. The trial court denied the defendant's petition. The defendant appeals from the order denying his request to file a successive postconviction petition and argues that he satisfied the necessary cause and prejudice requirements. See 725 ILCS 5/122-1(f) (West 2018); *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The defendant was involved in the robbery and murder of Randall Farrar, a Mt. Vernon businessman and philanthropist, on July 1, 2006. Three individuals were charged: Christopher Watkins, Watkins's brother, Demetrius Cole, and Cole's girlfriend, Krysta Donoho. The three defendants were separately tried. All three defendants were convicted. All three appealed to this court, and the three convictions and sentences were affirmed. See *People v. Donoho*, 2011 IL App (5th) 080354-U; *People v. Cole*, 2012 IL App (5th) 100542-U; *People v. Watkins*, 2014 IL App (5th) 110549-U.

2

¶ 5    On July 11, 2006, the mother of the defendant and Cole, Gwen Jones, called the Jefferson County Sheriff's Department to report that her sons were at Farrar's house and that according to the defendant, Cole shot Farrar. In a police interview, the defendant explained that Cole offered him $40 to drive Cole and his girlfriend, Donoho, to a house and that Donoho was going to get money from the man who lived in the house. Donoho initially went into the house. Ten minutes later, Cole went into the house. Then, the defendant stated that he exited the car and went up to the house. He stated that he saw Donoho running and crying, heard a man yell, then saw a man involved in a scuffle with Cole in the kitchen. The defendant told the police that Cole, Donoho, and the man then went into the basement. Donoho then came back upstairs and informed the defendant that Cole was going to kill the man. The defendant stated that he then heard gunshots and fled the house. Cole then ran out of the house and threatened the defendant that he would kill him if he "snitched."

¶ 6    The autopsy evidence revealed that Farrar had been beaten and shot. The victim had two fractured ribs, bloody eyes, scratches on his knees and shins, and bruises on the back of his neck and on his left forearm. The decedent had two bullet wounds to his head.

¶ 7    The police interviewed a juvenile, Chandra Jones, who had also been with the group at Farrar's house when he was killed. She confirmed that the defendant, Cole, and Donoho were inside the house. After the murder, Chandra stated that the group went to a Circle K gas station, to a McDonald's restaurant, and then to a Walmart store. Both the defendant and Cole were identified in surveillance videos from the gas station and the restaurant, displaying large amounts of cash.

¶ 8    After a jury trial, the State argued in closing that the defendant was guilty of first degree murder under accountability and the felony murder doctrine which was predicated on the offense of robbery. The jury found the defendant guilty of robbery and first degree murder.

3

¶ 9    The presentence investigation report revealed that the defendant had lived in homeless shelters with his mother, and later went to live with his father. The defendant's mother suffered from drug addiction. The defendant played football in high school, was recruited, and awarded a college athletic scholarship, and lost the scholarship over a conflict with a coach during summer camp.

¶ 10    At sentencing, the State acknowledged that the identity of the individual who shot Farrar was unknown. The defendant apologized to the Farrar family and asked for forgiveness, stating that while he was "under the influence" when Farrar was murdered, that fact did not excuse the criminal actions taken. The trial court vacated the robbery conviction. The court considered one factor in mitigation—that the defendant had no prior convictions. The court ultimately determined that a lengthy sentence was necessary and noted that Farrar's murder was planned, and that the defendant had the ability, at any point before the murder, to back out of the plan. The court also referenced surveillance video from the McDonald's restaurant recorded shortly after the murder in which the defendant was not demonstrating remorseful behavior. The court sentenced the defendant to a term of 45 years of imprisonment. The trial court denied all posttrial motions, including a motion to reduce the sentence.

¶ 11    On direct appeal, the defendant argued that he did not receive a fair trial due to the following three reasons: (1) his trial counsel was not allowed to impeach the State's primary witness to the extent that he wanted; (2) the chief detective's testimony included speculative and hearsay evidence; and (3) the State's closing argument was unduly prejudicial. The defendant also raised a jury instruction issue and argued that his sentence was excessive. As stated earlier in this order, this court affirmed the defendant's conviction and sentence. *Watkins*, 2014 IL App (5th) 110549-U. On the issue of the sentence, the defendant claimed that his sentence was excessive

4

considering the circumstances surrounding the commission of the offenses and because he had good rehabilitative potential with virtually no criminal history. *Id.* ¶ 3. Noting the sentencing judge's discretion, we found that the sentence was appropriate. *Id.* ¶ 85 (citing *People v. Chambers*, 258 Ill. App. 3d 73, 92 (1994)). The sentencing range for first degree murder was 20 to 60 years. *Id.* ¶ 86 (citing 730 ILCS 5/5-8-1 (West 2008)). The defendant's brother, Cole, had received a 45-year sentence on his murder conviction and a 7-year sentence on his robbery conviction. *Id.* Cole's girlfriend, Donoho, received a 45-year sentence on her felony murder conviction. *Id.* We also noted that the witness, Chandra Jones, provided evidence of the defendant's considerable involvement after the three arrived at Farrar's home. *Id.* ¶ 87. She had testified that she witnessed the defendant and Cole beating and stomping on Farrar. *Id.* Furthermore, the defendant had admitted that he blocked an exit path that Farrar could have taken, and he admitted taking money from a drawer under Farrar's bed. *Id.* We also found that despite the defendant's claims to the contrary, the trial court clearly considered the defendant's misdemeanor criminal history (and lack of a felony criminal history) in determining the appropriate sentence for this murder. *Id.* ¶ 89.

¶ 12    The defendant filed his *pro se* postconviction petition on May 14, 2015, in which he alleged that his trial counsel provided ineffective assistance for failing to call a witness who may have provided testimony that he was not involved in the murder. The defendant did not attach an affidavit to his petition. The trial court dismissed the postconviction petition finding that the petition failed to state the gist of a constitutional claim, and the defendant appealed. On appeal, we affirmed the trial court's dismissal stating that the defendant's failure to attach the affidavit was particularly problematic because of the claim involving a potential witness. *Watkins*, 2019 IL App (5th) 150387-U, ¶ 31. We found that the defendant was unable to establish prejudice as the State's

case against the defendant was strong, and thus he was not able to establish the gist of a constitutional claim. *Id.* ¶ 34.

¶ 13    On April 8, 2021, the defendant filed his *pro se* motion for leave to file a successive postconviction petition. He argued that his 45-year sentence amounted to a *de facto* life sentence, that the sentencing court did not consider his youth and attendant characteristics in imposing the sentence, and that his sentence violated the eighth amendment cruel and unusual punishment clause (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The defendant stated that *Miller v. Alabama*, 567 U.S. 460 (2012), applied to him because he was a young adult at the time that the murder was committed, and new scientific evidence showed that individuals between the ages of 18 and 25 were developmentally different from older adults. He claimed that this argument had not been available to him earlier. He also attached a notarized affidavit in which he stated that in his youth he had been abused mentally, physically, and sexually. His mother and father were both addicted to crack cocaine. He referenced the period in his youth when he and his mother were homeless and lived in abandoned buildings. He subsequently moved in with his father, but because he fought with his father, he was kicked out of his father's house, and that forced him to return to live with his mother. His brother, Cole, also lived with them. Cole had just been released from prison where he served time for shooting someone. The defendant stated that he began "stealing" and "robbing" from houses to make Cole proud of him. The defendant attached his prison work history and certificates obtained while incarcerated. He also attached various articles and studies regarding juveniles and young adults in the criminal justice system.

¶ 14    On April 29, 2021, the trial court denied the defendant's petition on the basis that it was frivolous and patently without merit. The court stated that *Miller v. Alabama* did not apply in this

6

case because the defendant was 21 when he committed the crime. Moreover, the average life expectancy for a male was more than 66—the age at which the defendant could be released from prison—and thus, the 45-year sentence was not a *de facto* life sentence. The defendant timely appealed from this order.

¶ 15                                    II. ANALYSIS

¶ 16    The defendant argues that he has made a *prima facie* showing of both elements of the cause-and-prejudice test (see *People v. Bailey*, 2017 IL 121450, ¶ 24) because he was unable to raise this claim in his initial postconviction petition and because his 45-year sentence was unconstitutional as applied to him as violative of his United States Constitution eighth amendment rights (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). We disagree.

¶ 17    A successive postconviction petition is governed by the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2018). An individual who has been convicted and is serving an Illinois criminal sentence can file a petition pursuant to the Post-Conviction Hearing Act to allege that his or her Illinois and federal constitutional rights were denied. *People v. Domagala*, 2013 IL 113688, ¶ 32; *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). A typical proceeding under the Post-Conviction Hearing Act has three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418-19 (1996). In the first stage, the postconviction court must independently review the petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *People v. Edwards*, 197 Ill. 2d 239, 244 (2001) (quoting *Gaultney*, 174 Ill. 2d at 418). If the postconviction petition sets forth the gist of a constitutional claim, the petition

7

advances to the second stage. *Gaultney*, 174 Ill. 2d at 418. At the second stage, the postconviction court appoints an attorney to represent the defendant. 725 ILCS 5/122-4 (West 2018). The State must file an answer or file a motion to dismiss. *Id.* § 122-5. In this second stage, the postconviction court must determine if the defendant has made a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. The postconviction court must accept all well-pleaded factual allegations as true, and the court must not engage in any fact-finding or credibility determinations. *Coleman*, 183 Ill. 2d at 385. The trial court must dismiss the petition if the defendant has not made the required substantial showing. *People v. Ward*, 187 Ill. 2d 249, 255 (1999). The postconviction court will hold an evidentiary hearing if the defendant gets past this second stage to the third stage. 725 ILCS 5/122-6 (West 2018).

¶ 18      The Post-Conviction Hearing Act contemplates the filing of one postconviction petition. *Id.* § 122-1(f). Therefore, the petitioner must obtain leave of court to file a successive postconviction petition. *People v. Anderson*, 402 Ill. App. 3d 1017, 1027 (2010). Section 122-1(f) of the Post-Conviction Hearing Act states:

> "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

8

Our legislature amended the section to codify the Illinois Supreme Court's cause-and-prejudice test from *People v. Pitsonbarger*, 205 Ill. 2d at 458-60. A petitioner has to make a *prima facie* showing of both cause and prejudice in order to obtain leave to file a successive postconviction petition. *People v. White*, 2020 IL App (5th) 170345, ¶ 18 (citing *Bailey*, 2017 IL 121450, ¶ 24). We review the denial of a motion for leave to file a successive postconviction petition on a *de novo* basis. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 19    The question of constitutional limitations on young adult sentences is a rapidly evolving area of law. See *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 23. Our understanding of the limitations has evolved primarily from three United States Supreme Court cases. In the first case, *Roper v. Simmons*, the Court held that the eighth amendment prohibits death sentences for juvenile offenders. *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005). In the second case, *Graham v. Florida*, the Court held that the eighth amendment prohibits sentences of natural life in prison for juvenile offenders who commit crimes other than homicide. *Graham v. Florida*, 560 U.S. 48, 82 (2010). In the third case, *Miller v. Alabama*, the Court held that a mandatory sentence of life without the possibility of parole violates the eighth amendment when imposed on a murder defendant for a murder committed as a juvenile. *Miller*, 567 U.S. at 470.

¶ 20    The rationale of the Supreme Court's holdings in *Miller*, *Graham*, and *Roper* is that juveniles have unique characteristics that give them both "diminished culpability and greater prospects for reform" compared to adult defendants. *Id.* at 471 (citing *Graham*, 560 U.S. at 68). The *Miller v. Alabama* Court noted that a mandatory sentence for a juvenile "precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 477. Furthermore, the sentencing court would not be able to consider the juvenile's family and home environment. *Id.*

9

Ultimately, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479.

¶ 21　The Supreme Court recognized that these youthful characteristics "do not disappear when an individual turns 18." *Roper*, 543 U.S. at 574. However, reasoning that the line must be drawn somewhere, the Court limited its holdings to defendants who were under the age of 18 when they committed their offenses. *Miller*, 567 U.S. at 465, *Graham*, 560 U.S. at 74-75; *Roper*, 543 U.S. at 574; see also *People v. Harris*, 2018 IL 121932, ¶ 56 (noting that the United States "Supreme Court has never extended its reasoning to young adults age 18 or over"). With the Supreme Court's opinion in *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016), the *Miller v. Alabama* holding was to be construed retroactively.

¶ 22　On March 20, 2014, the Illinois Supreme Court issued its decision in *People v. Davis*, 2014 IL 115595, ¶ 42, that made *Miller v. Alabama* retroactive to Illinois cases on collateral review.

¶ 23　After *Miller* and *Montgomery* were decided, the Illinois legislature enacted section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)), which mandated that sentencing courts consider the nine mitigating factors for offenders who were under the age of 18 when the offense was committed. The statute took effect on January 1, 2017.

¶ 24　In 2016, the Illinois Supreme Court issued its opinion in *People v. Reyes*, 2016 IL 119271, ¶¶ 1-2, involving a 16-year-old juvenile who had committed murder and was mandatorily sentenced to a 45-year term of imprisonment for murder to be served consecutively to two 26-year sentences for attempted murder, for an aggregate sentence of 97 years. The court found that as the sentencing scheme mandated that the juvenile remain imprisoned until he turned 105, he would very likely never be eligible for release, and thus the mandatory sentence was a *de facto* life

10

without parole sentence. *Id.* ¶ 10. The court vacated his sentence as unconstitutional pursuant to *Miller. Id.*

¶ 25    In 2017, the Illinois Supreme Court issued its opinion in *People v. Holman*, 2017 IL 120655, ¶¶ 1-2, involving a 17-year-old defendant who had committed murder and been discretionarily sentenced to life without parole. In *Holman*, the supreme court adopted *Miller* factors in cases where a court has the discretion to sentence a juvenile defendant to life imprisonment without parole, stating that this sentence could only be imposed "if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46. The supreme court reviewed the available record and concluded that the sentencing court's conclusion that the defendant was beyond rehabilitation was constitutionally appropriate. *Id.* ¶¶ 8, 11-12.[1]

¶ 26    In 2018, the Illinois legislature amended the sentencing statute so that individuals who were under 21 years of age at the time the crimes were committed are eligible for parole after serving 20 years of their sentence. 730 ILCS 5/5-4.5-115 (West Supp. 2019). To be eligible for parole pursuant to this sentencing statute, the defendant must have been sentenced on or after the effective date of the Act—June 1, 2019. *Id.* § 5-4.5-115(b).

___

[1]In *Jones v. Mississippi*, the United States Supreme Court stated that *Miller* does not require a sentencing court to make an explicit factual finding of permanent incorrigibility before sentencing a juvenile murderer under the age of 18 to a life without an opportunity for parole. *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1318-19 (2021). The eighth amendment allows a juvenile offender to be sentenced to life without parole if the sentence is not mandatory and the sentencing court has the discretion to " 'consider the mitigating qualities of youth' " and to impose a lesser punishment without a requirement that the court engage in a formal fact finding. *Id.* at ——, 141 S. Ct. at 1314-15 (quoting *Miller*, 567 U.S. at 476). As stated by the Illinois Supreme Court in *People v. Holman*: "Under *Miller* and *Montgomery*, a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. Since the United States Supreme Court issued its opinion in *Jones v. Mississippi*, the Illinois Supreme Court has not held that sentencing courts no longer need to make a determination of permanent incorrigibility before sentencing a juvenile offender to a life sentence.

¶ 27     In discussing the relevant characteristics of youth, the United States Supreme Court relied on developments in neuroscience and developmental psychology. *Miller*, 567 U.S. at 471-72; *Graham*, 560 U.S. at 68; *Roper*, 543 U.S. at 569. Illinois courts have held that young adult defendants can attempt to show that natural life sentences are unconstitutional as applied to them under the Illinois proportionate penalties clause. See *Harris*, 2018 IL 121932, ¶ 48; *People v. Thompson*, 2015 IL 118151, ¶ 44; *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 69; *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 34; *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 48.

¶ 28     Having set forth the legal foundations for seeking to file a successive postconviction petition and the background emerging law on young adult sentencing, we turn to the defendant's claims on appeal.

¶ 29                          A. Eighth Amendment Claim

¶ 30     *Miller* drew the line for application of mandatory life without parole sentences for juveniles under the age of 18, holding that a mandatory life sentence violated the eighth amendment's prohibition on cruel and unusual punishments. *Miller*, 567 U.S. at 465. Similarly, our Illinois Supreme Court also concluded that the line between juveniles and adults remains at 18 years of age. *Harris*, 2018 IL 121932, ¶ 60. In *Harris*, the defendant, who was 18 when he committed the crime, argued that his eighth amendment rights were violated by his 76-year term of imprisonment. *Id.* ¶ 61. The court rejected this claim noting that the "defendant falls on the adult side of that line." *Id.*; see also *White*, 2020 IL App (5th) 170345, ¶¶ 19-21 (rejecting the defendant's eighth amendment challenge to his mandatory life sentence because the defendant was 20 when he committed the murders and was thus past the 18-year-old division between childhood and adulthood); *People v. Pittman*, 2018 IL App (1st) 152030, ¶ 31 (rejecting the defendant's challenge under the eighth amendment to his mandatory life sentence because the defendant was 18 when he

12

committed the murders); *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 44 (rejecting the defendant's challenge under the eighth amendment to his life sentence because the defendant was 18 when he committed the murder).

¶ 31    Here, the defendant was 21 years and 11 months old when he participated in the brutal beating and murder of Farrar. In *Miller v. Alabama*, the United States Supreme Court held that the age of 18 marks the line between juveniles and adults for purposes of alleged eighth amendment violations. *Miller*, 567 U.S. at 465. Therefore, as the defendant was not a juvenile when he participated in Farrar's murder, *Miller v. Alabama* is not applicable to his case.

¶ 32    Since *Miller v. Alabama* does not apply to the defendant because he had already reached adulthood when he participated in Farrar's murder, the defendant is not able to establish either prong of the cause-and-prejudice test. Because the defendant was an adult when the murder was committed, and no recent case law or legislative enactment changed the applicable age for *Miller* protections in the years since he committed the crime, the defendant is unable to satisfy the cause element. Moreover, we find that the defendant was not prejudiced by the trial court's alleged failure to consider the defendant's youth and its attendant characteristics at sentencing.

¶ 33    Because we find that the defendant was unable to establish cause or prejudice on his eighth amendment claim, and as a defendant may not file a successive postconviction petition unless he establishes both a cause to file and resulting prejudice (*People v. Guerrero*, 2012 IL 112020, ¶ 15), the defendant's successive postconviction petition may not be considered on the merits. We affirm the trial court's order denying his motion for leave to file a successive postconviction petition with respect to his eighth amendment claim.

13

¶ 34                    B. Proportionate Penalties Clause

¶ 35    The defendant also claims that his 45-year sentence violates the proportionate penalties clause of the Illinois Constitution as applied to him. An "as-applied" constitutional challenge "is dependent on the particular circumstances and facts of the individual defendant or petitioner." *People v. Thompson*, 2015 IL 118151, ¶¶ 36-37 (citing *People v. Garvin*, 219 Ill. 2d 104, 117 (2006)). Under the proportionate penalties clause, the trial court must determine a defendant's sentence in keeping with the "seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. " '[A] penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *People v. Coty*, 2020 IL 123972, ¶ 31 (quoting *People v. Huddleston*, 212 Ill. 2d 107, 130 (2004)). As stated earlier in this order, the maximum sentence that the defendant faced for his first degree murder conviction was 60 years of imprisonment. 730 ILCS 5/5-4.5-20(a) (West 2010).

¶ 36    Illinois treats young adults under the age of 21 differently than adults for purposes of parole, referring to those under 21 as youthful offenders. See 730 ILCS 5/3-3-9(a)(1.5), 5-4.5-115(b) (West 2020). Further, the Juvenile Court Act of 1987 defines a "minor" as an individual under 21 years of age. 705 ILCS 405/1-3(10) (West 2020). An adult is defined as "a person 21 years of age or older." *Id.* § 1-3(2).

¶ 37    In *People v. Humphrey*, the appellate court noted that the defendant had been unable to find an Illinois case that recognized a life sentence imposed on an individual 21 or older was unconstitutional as applied to the offender under the proportionate penalties clause or the eighth amendment pursuant to the reasoning outlined in *Miller v. Alabama*. *People v. Humphrey*, 2020 IL App (1st) 172837, ¶ 33. The court held that offenders who are 21 years or older when they

14

commit an offense are construed as adults for purposes of a *Miller*-based proportionate penalties claim. *Id.* The court stated: "While 21 is undoubtedly somewhat arbitrary, drawing a line there is in keeping with other aspects of criminal law and society's current general recognition that 21 is considered the beginning of adulthood." *Id.* ¶ 34. The *Humphrey* court recognized that brain development research and conclusions are evolving and could provide support in the future for individuals who are 21 or older when they commit the crime. *Id.* ¶ 33; see also *People v. Rivera*, 2020 IL App (1st) 171430, ¶¶ 26-27 (decided before *Humphrey* and holding that the defendant, who was 23 when he committed the offenses of first degree murder and armed robbery, could not bring an as-applied challenge to his 55-year sentence pursuant to the proportionate penalties clause); *People v. Suggs*, 2020 IL App (2d) 170632, ¶¶ 30-44 (decided before *Humphrey* and holding that the defendant, who was 23 when he committed first degree murder, attempted murder, and attempted armed robbery, could not bring an as-applied challenge to his 80-year sentence pursuant to the eighth amendment).

¶ 38    Since *Humphrey*, *Rivera*, and *Suggs* were decided, other appellate courts have similarly concluded that if the offender is 21 or older, he is not able to raise an as-applied constitutional challenge pursuant to *Miller v. Alabama*. See *People v. Guerrero*, 2022 IL App (1st) 210400, ¶ 32 (holding that the defendant, who was 22 when he committed first degree murder, was an adult for purposes of a *Miller v. Alabama* claim, and thus was not able to raise an as-applied proportionate penalties challenge to his 45-year sentence because *Miller* protections could not be extended for juvenile offenders 21 or older); *People v. Montanez*, 2022 IL App (1st) 191930, ¶¶ 54-59 (holding that the defendant, who was 21 when he committed two first degree murders, aggravated vehicular hijacking, and aggravated kidnapping, was not eligible to bring an as-applied constitutional proportionate penalties challenge to his natural life sentence); *People v. Everett*, 2022 IL App (1st)

15

201169, ¶¶ 41-42 (holding that the defendant, who was 23 when he committed the offenses of first degree murder, attempted first degree murder, and aggravated discharge of a firearm, could not bring an as-applied constitutional proportionate penalties clause challenge to his 51-year sentence); *People v. Hemphill*, 2022 IL App (1st) 201112, ¶¶ 30-31 (holding that the defendant, who was 21 when he committed the offenses of first degree murder, aggravated kidnapping, armed robbery, and attempted armed robbery, was not entitled to bring an as-applied constitutional proportionate penalties challenge to his 40-year sentence); *People v. Green*, 2022 IL App (1st) 200749, ¶¶ 42-49 (holding that the defendant, who was 21 years old and intellectually disabled when he was charged with murder, attempted murder, and armed robbery, was not eligible to bring an as-applied constitutional challenge to his 100-year sentence under either the eighth amendment or the proportionate penalties clause); *People v. Kruger*, 2021 IL App (4th) 190687, ¶ 32 (holding that the defendant, who was 21 when he committed the offenses of felony murder, home invasion, and residential burglary, was not entitled to bring an as-applied eighth amendment constitutional challenge to his natural life sentence).

¶ 39 The Illinois Supreme Court has left open the possibility that a young adult defendant could show that an actual or *de facto* life sentence without a *Miller*-type hearing is unconstitutional as applied to him under the proportionate penalties clause. See *Harris*, 2018 IL 121932, ¶ 46; *People v. Thompson*, 2015 IL 118151, ¶ 44. However, our appellate court has held that as-applied youth-based sentencing challenges are not available to defendants who were direct participants in a crime and who were 20 years old or older at the time of offense (and, therefore, was not "a teenager on the cusp between a juvenile and adult who was minimally culpable"). *People v. White*, 2020 IL App (5th) 170345, ¶ 28 (where the defendant was 20 years old); *People v. Green*, 2020 IL App (5th) 170462, ¶ 42 (where the defendant was 22 years old).

16

¶ 40    In *People v. White*, this court found that the defendant's as-applied constitutional challenges could not be brought under either the eighth amendment or the proportionate penalties clause. *White*, 2020 IL App (5th) 170345, ¶¶ 20, 29. In *White*, the defendant, who was 20 years of age when the crimes were committed, was convicted of two murders and one count of concealment of a homicidal death and was sentenced to natural life for each murder conviction and five years on the concealment conviction. *Id.* ¶¶ 4-5, 19. He sought leave to file a successive postconviction petition and alleged constitutional challenges as applied to him pursuant to the eighth amendment (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Id.* ¶ 13. On appeal, we found that *Miller v. Alabama* protections under the eighth amendment were "simply not implicated in cases of adult offenders" and "[t]herefore, the defendant cannot benefit from the specific considerations that attend youth at sentencing." *Id.* ¶ 20. Moreover, the court found that the allegations the defendant presented could not support a finding that his mandatory life sentence is cruel and unusual. *Id.* The court similarly found that the case did not support the defendant's as-applied challenge pursuant to the proportionate penalties clause, noting that the murders were violent, the defendant bore culpability for the crimes, and because he was an adult, his natural-life sentence did not shock the moral sense of the community. *Id.* ¶ 29.

¶ 41    In this case, the defendant claimed that he did not help to plan the crime, but merely provided Cole and Donoho with transportation to Farrar's house. The defendant was aware that Cole and Donoho were planning to obtain money from Farrar. The defendant originally claimed that he did not participate in the murder, but the witness, Chandra Jones, placed him squarely inside the house where she witnessed the defendant and Cole beating and stomping on Farrar's body. The defendant admitted that he blocked Farrar from making a possible exit. The defendant also

17

admitted that he took money from Farrar's house. A celebration of sorts followed the murder. Video obtained from an area McDonald's restaurant showed the defendant high-fiving Cole and displaying all the money he obtained from Farrar's house. The defendant was not showing fear or remorse. Whether the defendant participated in the planning of Farrar's murder, he clearly participated in the plan to take money from Farrar and in the commission of the murder by blocking the victim's exit. The defendant maintained the ability to depart Farrar's home or to attempt to stop what had been set in motion by Cole. Instead, the defendant stayed.

¶ 42    We have reviewed the transcript of the defendant's sentence hearing. We note that his attorney referenced the defendant's young age and argued that his criminal conduct was the result of circumstances unlikely to recur because he was "no longer a 21 year old dope-smoking kid under the influence of his brother." However, the trial court did not verbally indicate that it had considered the defendant's age in determining that the appropriate sentence was a term of 45 years. Even if the court did not consider the defendant's age, as this court has indicated, there are several appellate cases concluding "that a trial court's failure to consider a defendant's youth amounts to nothing more than a *** claim that the court abused its sentencing discretion" and therefore, the allegation would not constitute a genuine claim of a constitutional deprivation. *White*, 2020 IL App (5th) 170345, ¶ 30 (citing *People v. Hoover*, 2019 IL App (2d) 170070, ¶ 38).

¶ 43    Given the defendant's age when the murder occurred, and the 45-year sentence he received, we are not able to find that the sentence was "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." *Coty*, 2020 IL 123972, ¶ 31 (quoting *Huddleston*, 212 Ill. 2d at 130). We also conclude that the defendant was not prejudiced by the sentence imposed because he was 21 years of age when the murder was committed, and thus case law did not support an as-applied proportionate penalties challenge.

18

¶ 44    Because we find that the defendant was unable to establish prejudice on his proportionate penalties claim, and as a defendant may not file a successive postconviction petition unless he establishes both a cause to file and resulting prejudice (*Guerrero*, 2012 IL 112020, ¶ 15), we decline to address the cause prong. The defendant failed to make a *prima facie* showing of prejudice, and therefore, the defendant's successive postconviction petition may not be considered on the merits. We affirm the trial court's order denying his motion for leave to file a successive postconviction petition.

¶ 45    We acknowledge that there may be factual cases involving young adult offenders that warrant a second look to determine if the sentence imposed is appropriate considering *Miller v. Alabama.* While some cases have extended juvenile sentencing guidelines to offenders who have not yet reached 21 years of age, any extensions to offenders 21 and older "should be made by our legislature or our highest court." *Rivera*, 2020 IL App (1st) 171430, ¶ 27.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated in this order, we affirm the order of the Jefferson County circuit court denying the defendant's motion for leave to file a successive postconviction petition.


¶ 48    Affirmed.